**LANE'S ALUMINUM INDUSTRIES, INC., d/b/a Lane's Aluma Craft Awning Company, Inc., Appellant,**

v.

**Clarence P. JONES et ux., Appellees.**

No. 14455.

Court of Civil Appeals of Texas.

San Antonio.

May 18, 1966.

On Remittitur June 22, 1966.

against Lane's Aluminum Industries, Inc., d/b/a Lane's Aluma Craft Awning Company, Inc., J. D. Lane and Harrison Price, seeking actual and exemplary damages for trespass and the wrongful taking of an aluminum awning. In answer to special issues, the jury found that appellant, Lane's Aluminum Industries, Inc., knew or should have known that appellees were in possession of the awning and that J. D. Lane, herein called "Lane," president of appellant, was actuated by malice in removing the awning. The market value of the awning was found to be $2,380.00, and the jury allowed appellees exemplary damages in the sum of $7,500.00. The trial court entered judgment in favor of appellees against appellant, but denied them any recovery against J. D. Lane and Harrison Price.

One W. E. Hisaw, who was president of Taylor Freezer Sales and Distributing Co., a corporation, hereinafter called "Taylor," was in the business of selling drive-in restaurant "packages" to persons desiring to operate drive-in restaurants. The "package" consisted of a building with necessary equipment, as well as awnings under which the customers of the restaurant would park their cars. Prior to the spring of 1961, Hisaw had, on several occasions, purchased buildings and aluminum awnings from appellant. On all occasions prior to 1961, Lane knew that at the time Hisaw purchased the building and awning he had already arranged for the sale of the "package" to a customer.

In the spring of 1961, Hisaw purchased a building and the awning in question from appellant. The purchase was on open account, no mortgage or conditional sale contract being executed by Hisaw. The building and awning were installed at 447 New Laredo Highway, in the City of San Antonio. Apparently, the land on which the building was erected was leased from its owner, Melvin Pickett, under an instrument which provided that the improvements should remain the property of the lessee.

Lagerquist, Shaw & Davis, San Antonio, for appellant.

Frank Y. Hill, Jr., San Antonio, for appellees.

CADENA, Justice.

This suit was instituted by appellees, Clarence P. Jones and wife, Virginia Jones,

On April 21, 1961, Taylor, acting through its president, Hisaw, sold the Laredo Highway "package" to David Ellis. To secure payment of the unpaid portion of the purchase price, Ellis executed a chattel mortgage of the building and equipment, including the awning in question, to Taylor.

On June 12, 1961, Taylor, acting through Hisaw, assigned the Ellis contract and chattel mortgage to Glenn Foster, Inc., hereinafter called "Foster." This chattel mortgage, together with the assignment thereof, was recorded on June 22, 1961.

On September 20, 1961, Hisaw executed a chattel mortgage to appellant covering the awning in question, as well as the building which he had purchased from appellant. This mortgage was assigned by appellant to a bank on September 26, 1961, and filed for record on October 2, 1961.

Ellis was unsuccessful in his operation of the drive-in restaurant and defaulted in the payments due under the contract and mortgage which had been assigned to Foster. During the summer of 1962, apparently in July, 1962, Ellis vacated and abandoned the premises, telling one of Foster's employees that Foster could "have it." Foster then demanded of Hisaw that Taylor make the payments, but Taylor was unable to do so. Foster then directed Hisaw to attempt to find a buyer for the business. Hisaw induced appellees to purchase the business, and on August 28, 1962, Foster sold the business to appellees.

On August 30, 1962, appellees leased the land on which the business was located from its owner, Pickett. This lease contained a provision that the improvements on the land should remain the property of the lessees. Appellees then began working during the day, cleaning the building and making preparations for opening the business.

About two weeks prior to September 11, 1962, Lane instructed Price, whom Lane described as appellant's "commission agent," to repossess the awning because of Hisaw's failure to pay for it. On September 11 one of appellant's crews was in San Antonio, and Price took the crew to the Laredo Highway location at about 9:00 p. m. and pointed out the awning to them. Before the crew began the task of removing the awning from the building, Price telephoned Lane, who was in Houston, and was told by Lane to cut the awning off the building and remove it. The removal of the awning was completed sometime after midnight.

Since it is undisputed that at the time the awning was removed appellees were in actual possession thereof, it was incumbent on appellant to show title in itself superior to the rights of the appellees as possessors. 56 Tex.Jur.2d, Trespass, § 26, p. 34. The evidence establishes that, at the time the awning was taken, appellant had no rights whatever. The only right to possession on which appellant might rely would be dependent on its right of foreclosure under the mortgage given to it by Hisaw. But the evidence is undisputed that appellant had assigned this mortgage to a third party. In the absence of evidence showing a re-assignment of the mortgage to appellant, or that appellant was acting on behalf of its assignee in removing the awning, it must be concluded that the removal of the awning by appellant was wrongful.

Appellant next urges that the evidence does not support the award of exemplary damages. There is no evidence which would permit the inference that Lane, or any officer of appellant, had reason to believe that the mortgage under which appellant claims had been re-assigned to it. In this respect, the case differs from O'Hara v. Ferguson Mack Truck Company, Tex.Civ.App., 373 S.W.2d 507, wr. ref. n. r. e. There the trespasser, before taking possession of the mortgaged property, had consulted the bank to which he had assigned the mortgage, and had been told that the mortgage would be re-as-

signed to him. In O'Hara, then, the trespasser was, at most, negligent in not ascertaining that the promised re-assignment in fact had been executed. Here there is nothing to indicate that appellant or any of its officers had any reason to believe that a re-assignment of the mortgage would be executed, and therefore there is no basis for claiming a good faith belief that appellant had any rights under the mortgage which it no longer owned.

■ Lane, president of appellant, testified that he had no knowledge that any person but Hisaw was claiming any interest in the awning. Even if this testimony be true, appellant would have no right to repossess the awning from Hisaw, since appellant had assigned its mortgage. However, the evidence showed that more than a month before the awning was removed, appellant had filed a suit in Bexar County, Texas, seeking foreclosure of the Hisaw mortgage. In its petition in that case, appellant alleged that a subsequent mortgage had been executed to Foster, and asked that such mortgage be set aside. The rule is that pleadings in other actions which contain statements inconsistent with a party's present position are receivable as admissions. Hamilton v. Van Hook, 26 Tex. 302 (1862); Lombardino v. Firemen's and Policemen's Civil Service Commission, Tex.Civ.App., 310 S.W.2d 651, wr. ref. n. r. e. Under this evidence, the jury was justified in concluding that, more than a month before the removal of the awning, appellant knew that persons other than Hisaw were claiming an interest in the awning. In addition, the evidence established that Lane, appellant's president, knew that on each prior occasion when Hisaw had purchased buildings and awnings from appellant, it was for the purpose of immediate resale to a third party, who had already agreed to purchase a drive-in package from Hisaw.

■ Since the evidence established that appellant had no right to take the awning, and since the jury was justified in con-cluding that appellant had actual notice that others besides Hisaw were claiming an interest therein, we cannot say that the finding of malice on the part of appellant's president is contrary to the great weight and preponderance of the evidence.

The only evidence as to the market value of the awning on the date it was removed came from Price, one of the defendants. His testimony was to the effect that the market value of a new awning was $2,380.00. In his opinion, taking depreciation into consideration, the market value of the awning in question on September 11, 1962, would be seventy-five or eighty per cent of the market value of a new awning. This evidence would indicate that the awning in question was worth no more than $1,904.00 at the time of its removal.

■ The evidence of appellees' other value witness, Fred Flores, related exclusively to the difference in market value of the drive-in "package" with and without an awning. Since the value question was not submitted to the jury on a "before and after" basis, there is nothing in the testimony of Flores to support the jury's finding that the value of the awning was $2,380.00.

■ We find no error in the judgment below except that portion which awards appellees the sum of $2,380.00 as actual damages for the removal of the awning. Such award is excessive in the amount of $476.00. If appellees will file a remittitur in the sum of $476.00, within ten days after the announcement of this decision, the judgment of the trial court will be reformed accordingly, and, as reformed, will be affirmed. Otherwise, the judgment of the trial court will be reversed and the cause remanded for a new trial.

### On Filing of Remittitur.

In our opinion delivered and filed on May 18, 1966, this Court suggested that if appellees would file a remittitur in the

amount of $476.00 within ten days, the judgment of the trial court in favor of appellees would be reformed and, as reformed, affirmed. Appellees filed the suggested remittitur on May 20, 1966.

Accordingly, the judgment of the trial court is reformed in conformity with such remittitur and, as so reformed, is affirmed.